UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREGORY JOHNSON, | ) | 3:23-CV-1072 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERARD G. GAGNE, *et al.*, | ) | |
| *Defendants*. | ) | February 25, 2026 |

## RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO CONSOLIDATE

Sarala V. Nagala, United States District Judge.

Plaintiff Gregory Johnson commenced this action pursuant to 42 U.S.C. § 1983 against the Connecticut Department of Correction ("DOC") and forty-four DOC officials,[1] alleging various violations of his civil rights during a seven-year period while in DOC's custody. Pending before the Court are Defendants' motion to dismiss the fourth amended complaint ("FAC")—the operative pleading in this matter—and Plaintiff's motion to consolidate this action with another case pending before the undersigned, *Johnson v. State of Connecticut et al.,* Case No. 24-CV-728 (SVN). For the reasons set forth in this ruling, Defendants' motion to dismiss is **GRANTED IN PART**, and Plaintiff's motion to consolidate is **DENIED.**

## I.      FACTUAL BACKGROUND

The following facts are taken from the FAC and accepted as true for purposes of resolving Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Plaintiff sues the following individuals: Angel Quiros, Colleen Gallagher, Byron Kennedy, Cary Freston, Daniel Doughtery, Kristine Barone, David Snyder, Nick Rodriquez, Omprakash Pillai, Syed Johar Naqvi, Jean Caplan, Karen Grande, Brian Rader, Michelle Walsh, Liz Vereen, Katherine Iozzia, Michael Pearson, Tawanna Furtick, Nikia Henderson, Jennifer Cruz, Kristen Shea, Damian Doran, Kristan Mangiafico, Gerard G. Gagne, Carley Cann-McGregor, Kayla Lozada, Kara Phillips, Thomas Kocienda, Lalitha Pieri, Barbara Kimble-Goodman, Todd Wemmell, Brian Stanley, Fleming, Ingrid Feder, Johnny C. Wright, Robert Richeson, Lt. Feliz, Officer Lahda, Anthony Jusseaume, Tim Daley, James Smyth, Peter Jamison, Ronald Medwick and Frankie Cuevas.

Plaintiff's FAC details a wide range of alleged constitutional violations by employees of the DOC, spanning the period from September of 2019 through May of 2024. *See generally* FAC, ECF No. 251. Plaintiff alleges that he is a wheelchair-bound prisoner who suffers from disabilities and medical conditions that substantially limit major life activities. *Id.* ¶¶ 32–34.[2] His documented medical conditions include urinary retention requiring an indwelling Foley catheter; bowel incontinence; an enlarged prostate and shifted bladder; degenerative disc disease and spinal injuries resulting in paraplegia; chronic pain and nerve damage; hypoglycemia and hypertension; glaucoma and pterygium; and Post-Traumatic Stress Disorder ("PTSD"). *Id.* ¶¶ 33–34. These conditions necessitate accommodations, including wheelchair accessibility, nursing assistance for transfers and toileting, appropriate medical equipment, a therapeutic diet, and housing compliant with the Americans with Disabilities Act ("ADA"). *Id.* ¶ 34.

A. Denial of ADA Accommodations

Plaintiff alleges that in September of 2019, he was transferred to the Corrigan Correctional Center ("Corrigan"). *Id.* ¶ 46. This facility's units, cells, rooms and doors were not ADA-compliant for wheelchair accessibility. *Id.* Upon transfer to the MacDougall-Walker Correctional Institution ("MacDougall") in February of 2021, and placement in various units at this facility between March of 2021 and June of 2023, Plaintiff encountered similar ADA violations, including cell doorways too narrow for his wheelchair, inaccessible showers and bathrooms, and the absence of necessary grab bars. *Id.* ¶¶ 48–52.

---

[2] The FAC contains paragraphs with duplicate numbering. For instance, pages one through ten contain paragraphs 1 through 51, and then the "Factual Allegations" section beginning on page ten begins, inexplicably, with a paragraph numbered 32. *See* ECF No. 251. Likewise, after paragraph 78 on page 19, the FAC restarts paragraph numbering with 72, also on page 19. There are other paragraph numbering discrepancies as well. For purposes of its factual summary, the Court relies on the paragraph numbers from the "Factual Allegations" section of the FAC, and has attempted to clarify to which paragraphs it is citing when there is more than one paragraph with the same number.

Additionally, Plaintiff was denied assistive devices and various reasonable accommodations necessary for him to access services within the prison. *Id.* ¶¶ 56, 58. For example, Plaintiff alleges that he was denied an appropriate wheelchair that could fit through doorways, a commode properly sized for prison toilets, a slide board for transfers, a medical mattress appropriate for his back injuries, assistance with transportation to medical appointments and services, and assistance with showering and toileting. *Id.* ¶ 58. On one occasion, Plaintiff lacked a functional commode for approximately fourteen months (i.e., from May of 2021 to July of 2022), forcing him to resort to unsanitary waste disposal methods. *Id.* ¶ 59. Plaintiff further alleges that the wheelchairs provided to him were often broken, ill-fitting, unsafe or too large to navigate doorways. *Id.* ¶ 60. And despite Plaintiff's documented need for mobility assistance, this too was denied, forcing him to self-propel over long distances, which exacerbated his injuries. *Id.* ¶¶ 63–66. This lack of mobility assistance also caused Plaintiff to miss medical appointments, religious services, court videoconferences, and other programs and services at the prison. *Id.* ¶ 66.

B. <u>Sexual Assault and Battery</u>

Next, Plaintiff alleges that on November 13, 2020, while house in the Corrigan infirmary, he was sexually assaulted by Defendant Tim Daley, while Defendant Anthony Jusseaume blocked a security camera and encouraged the assault. *Id.* ¶¶ 35–36. Daley forcibly inserted a catheter into Plaintiff's rectum rather than his urethra, stating that he was "teaching [Plaintiff] a lesson." *Id.* ¶¶ 35–37. Defendant Carley Cann-McGregor, who allegedly provided the catheter used in the assault, subsequently refused to provide Plaintiff medical attention. *Id.* ¶¶ 36, 38.

Despite reporting this assault to multiple officials, Plaintiff's request for investigation and medical examination were denied. *Id.* ¶¶ 39–40. When Plaintiff pursued civil protective orders against his assailants in the Connecticut Superior Court for the District of New London in July of

2023, Defendant Pearson allegedly removed critical evidence from his cell, such as video preservation receipts documenting the incident, and a non-party Assistant Attorney General misrepresented facts to the court. *Id.* ¶¶ 43–44. Plaintiff alleges that he continues to experience severe trauma from this assault, and that Defendant Gagne and other DOC staff have systemically denied his requests for mental health treatment. *Id.* ¶ 45.

C.  Deliberate Indifference to Serious Medical Needs (Various Medical Conditions)

Next, Plaintiff's FAC recounts Defendants' alleged deliberate indifference to a wide array of medical needs. Plaintiff alleges that he was diagnosed with urinary retention requiring an indwelling Foley catheter since September of 2020. *Id.* ¶ 69. Although multiple specialists recommended surgery to remedy this issue during November of 2020 and January of 2021, Defendants Byron Kennedy, Cary Freston, Robert Richeson, Johnny C. Wright, Omprakash Pillai, Jean Caplan, Karen Grande, Rader and Syed Johar Naqvi denied these recommendations and/or cancelled the surgical consultation. *Id.* ¶¶ 69–71, 96, 117. Defendants instead maintained Plaintiff on a permanent Foley catheter, resulting in recurring urinary tract infections ("UTI") and hospitalization for sepsis. *Id.* ¶ 72, 75.

On November 8, 2020, Defendant Kayla Lozada inserted the Foley catheter improperly and continued this procedure despite Plaintiff's pain and blood loss. *Id.* ¶ 73. And on other occasions, certain female nurses, including Defendants Kara Phillips, Cann-McGregor and Lozada, refused to insert or change Plaintiff's Foley catheter altogether, stating that they needed to wait for the assistance of a male nurse. *Id.* ¶ 72. Plaintiff contends that this constituted gender discrimination. *Id.*

Additionally, Plaintiff alleges that Defendant Dr. Ingrid Feder, Plaintiff's primary care provider at Corrigan from September of 2019 through February of 2021, exhibited deliberate

indifference by failing to follow specialist recommendations, delaying treatment for urinary tract infections, and providing inadequate pain management. *Id.* ¶¶ 70–78. In October of 2020, when Plaintiff complained of UTI symptoms, Dr. Feder delayed testing for twelve days and subsequently failed to order treatment for Plaintiff after he tested positive for a UTI. *Id.* ¶¶ 73–74. On February 14, 2021, Plaintiff contracted another UTI; Dr. Feder allegedly denied Plaintiff a full dosage of prescribed antibiotics, and other DOC staff withheld portions of his medication. *Id.* ¶ 77. On a separate occasion, in September of 2020, Dr. Feder failed to issue Plaintiff a medical mattress, causing him to experience unnecessary pain. *Id.* ¶ 76.

Moreover, Plaintiff alleges that Defendants denied him appropriate treatment and medication for nerve pain, high blood pressure and allergies. *Id.* ¶ 80. Defendants also discontinued Plaintiff's medically necessary therapeutic diet in June of 2023, which had been in place since 2017 to manage his hypoglycemia, bowel incontinence, and allergies. *Id.* ¶¶ 81, 118. This discontinuation caused Plaintiff to suffer severe physical symptoms including rectal bleeding, hypoglycemic episodes, and allergic reactions, among other symptoms. *Id.* ¶ 81.

Furthermore, Plaintiff alleges that he suffers from several mental health conditions, which Defendants have failed to adequately treat. *Id.* ¶ 121. Defendant Dr. Gagne discontinued Plaintiff's psychotropic medications twice—in September of 2019 and June of 2023—maintaining that Plaintiff did not have PTSD and did not require medications, despite orders by other providers. *Id.* ¶¶ 128–29. And Defendants Kocienda, Pieri and Kimble-Goodman failed to intervene to ensure Plaintiff received appropriate mental health treatment. *Id.* ¶ 130.

Moreover, in November of 2021, Defendant Lahda confiscated and destroyed Plaintiff's photo albums while he was on suicide watch, worsening his mental health symptoms and emotional distress. *Id.* ¶ 122–26. Although Plaintiff filed complaints with facility supervisors,

they took no remedial action and Plaintiff's property was neither compensated for nor replaced. *Id.* ¶ 127.

D. Deliberate Indifference to Serious Medical Needs (Eye Care)

Plaintiff's FAC also details Defendants' alleged denial of appropriate ophthalmology care for glaucoma, pterygium and a previous eye injury requiring surgical repair. *Id.* ¶ 82. Plaintiff alleges that despite his repeated requests for prescription lenses, glaucoma treatment, and replacement of broken frames, and his need for surgery, Defendants Dr. James Smyth, Peter Jamison and Ronald Medwick have ignored these referrals or otherwise failed to provide the procedure—leaving Plaintiff with blurred vision, headaches, eye strain, eye infections and worsening eye conditions. *Id.* ¶¶ 83–95. As a result, Plaintiff alleges that he faces an imminent risk of permanent blindness. *Id.* ¶¶ 93, 119.

E. Deliberate Indifference to Serious Medical Needs (Dental Care)

Plaintiff alleges that Defendants also denied him appropriate dental care. While housed at Corrigan from September of 2019 to February of 2021, Plaintiff repeatedly sought treatment for cavities, pain and tooth sensitivity—and multiple nurses alerted Defendant Dr. Michaela Kelly about Plaintiff's dental needs—yet Dr. Kelly delayed evaluating Plaintiff for several months, allegedly stating that she was reluctant to treat him due to his history of filing complaints against DOC staff. *Id.* ¶¶ 98–99. When Dr. Kelly finally examined Plaintiff, she refused to provide restorative treatment, such as filling cavities. *Id.* ¶ 100. Dr. Kelly instead extracted Plaintiff's teeth and provided only minimal palliative care, such as a small tube of Orajel, and advised Plaintiff to purchase Sensodyne toothpaste from the commissary at his own expense. *Id.* ¶ 101. When the Orajel was depleted after one week, Dr. Kelly refused to provide Plaintiff additional pain relief. *Id.* As a result of these alleged events, Plaintiff avers that his dental condition has

deteriorated significantly—a filling in one tooth has fallen out and has led to gum infection. *Id.* ¶ 102.

Plaintiff alleges that when he was transferred to MacDougall in February of 2021, he continued to suffer from the same untreated dental conditions. *Id.* ¶ 103. Defendant Dr. Cuevas delayed evaluating Plaintiff for months and treated him with hostility during the eventual examination. *Id.* ¶ 104. Specifically, Plaintiff alleges that Dr. Cuevas expressed disbelief about Plaintiff's disability and forced him to stand without assistance. *Id.* ¶¶ 105–07. Dr. Cuevas also refused to provide restorative treatment for Plaintiff's tooth and overcharged him for dental services. *Id.* ¶¶ 108–09. According to Plaintiff, both Dr. Kelly and Dr. Cuevas refused to provide him restorative treatment, citing alleged budget constraints. *Id.* ¶ 111.

Between June of 2023 and February of 2024, while housed at Corrigan, Plaintiff saw another unnamed dentist, who confirmed that his tooth could be repaired, but again denied him restorative care, citing similar budget constraints. *Id.* ¶ 112.

As a result of these alleged events, Plaintiff alleges that he suffers ongoing pain, gum infection, bad breath affecting his social interactions, the inability to chew food properly, declining dietary restrictions, and progressive deterioration of adjacent teeth due to trapped food debris and bacterial infection. *Id.* ¶ 113.

F.  Retaliation

Plaintiff alleges that following complaints to various oversight agencies, Defendants retaliated against him by transferring him between facilities (MacDougall and Corrigan) in February of 2021, June of 2023, and May of 2024. *Id.* ¶¶ 87–94.[3] These transfers disrupted Plaintiff's medical care, resulted in denial of previously granted accommodations, and rendered

---

[3] These paragraphs begin on page 30 of the FAC.

his pending legal actions moot. *Id.* ¶ 95. Prior to the June 2023 transfer, DOC investigators purportedly offered Plaintiff incentives to withdraw his pending complaints and lawsuits, including cancellation of a planned transfer to Corrigan and assistance with an out-of-state transfer, which Plaintiff refused. *Id.* ¶ 92. Shortly after Plaintiff filed additional complaints, certain Defendants allegedly discontinued his therapeutic diet and cancelled orders for nursing assistance that had been approved by treating physicians. *Id.* ¶¶ 96–97.

Plaintiff also alleges that Defendants Wemmell, Stanley, Lahd and Fleming retaliated against him for filing complaints and for having an attorney and her investigator visit the MacDougall's housing unit to document ADA violations. *Id.* ¶ 98. These Defendants also allegedly encouraged another inmate, Brian Wilson, to assault Plaintiff on August 25, 2022, and then conspired to conceal the assault by not filing incident reports or creating a timely "separation profile" for Plaintiff and Wilson. *Id.* On an unknown date, Defendant Lt. Feliz allegedly retaliated against Plaintiff for filing complaints about ADA violations and the inmate assault by using excessive force against him and placing him in segregation. *Id.* ¶ 99.

G. <u>Denial of Religious Exercise</u>

Finally, Plaintiff alleges that he is a practicing Hebrew Israelite, whose sincerely held religious beliefs forbid him from undergoing urodynamic testing—a procedure requiring the simultaneous insertion of catheters into both the bladder and rectum, with electronic monitoring equipment attached to one's genitals while one urinates and defecates in the presence of medical technicians. *Id.* ¶¶ 103–05. Plaintiff alleges that despite the availability of alternative diagnostic methods and existing medical evidence supporting surgical intervention, Defendants refuse to provide him urological treatment unless he undergoes urodynamic testing, which violates his sincerely held religious beliefs of bodily integrity and prohibitions against invasive procedures that

violate God's law.  *Id.* ¶¶ 103–117.  This prerequisite has allegedly led to continued deterioration of Plaintiff's condition, including kidney damage and recurring infections.  *Id.* ¶ 116.

    E. Plaintiff's Claims

    Following Plaintiff's submission of his original expansive complaint and two similarly sprawling amended complaints each containing hundreds of allegations and dozens of claims against dozens of defendants, the Court appointed *pro bono* counsel to represent Plaintiff for the limited purpose of advising Plaintiff regarding the requirements of Federal Rules of Civil Procedure 8, 18, and 20, and to work with him to draft a third amended complaint.  *See* Order, ECF No. 97.  The first two *pro bono* counsel were replaced by Attorney Taubes, who ultimately agreed to expand the scope of his representation of Plaintiff to all purposes.  *See* Orders, ECF Nos. 100, 105, 123, 157, 219.  Attorney Taubes submitted the FAC on behalf of Plaintiff.[4]

    Plaintiff's FAC asserts the following claims pursuant to 42 U.S.C. § 1983: (i) violations of the ADA and Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act"); (ii) deliberate indifference to serious medical needs in violation of the Eighth Amendment to the United States Constitution, based on various medical conditions; (iii) First Amendment retaliation; (iv) sexual assault and battery, in violation of the Eighth Amendment and Connecticut law; (v) deliberate indifference to serious medical needs (eye care), in violation of the Eighth Amendment; (vi) deliberate indifference to serious medical needs (dental care), in violation of the Eighth Amendment; and (vii) violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  As relief, Plaintiff seeks compensatory and punitive damages, injunctive and

---

[4] As of the date of this ruling, Plaintiff has moved to remove Attorney Taubes as his counsel and to withdraw the FAC, seeking to replace it with a Fifth Amended Complaint.  *See* Mot. to Withdraw FAC, ECF No. 287; Mot. for Removal of *Pro Bono* Counsel, ECF No. 288.  The Court has granted Attorney Taubes' request for time until March 16, 2026, to meet and confer with Plaintiff about these motions.  *See* Order, ECF No. 294.

declaratory relief, and attorney's fees. Within each count, Plaintiff does not identify which particular Defendants he sues.

All Defendants moved to dismiss the FAC for failure to state a claim upon which relief may be granted. ECF No. 264. Plaintiff opposes this motion. ECF No. 275. Additionally, prior to the filing of the pending motion to dismiss, Plaintiff moved to consolidate this action with another case pending before the undersigned, *Johnson v. State of Connecticut et al.,* Case No. 24-CV-728 (SVN) ("*Johnson II*"). ECF No. 215.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and

"a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

## III.    DISCUSSION

For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss in part.  Specifically, it concludes that Plaintiff's many claims are not properly joined in this action, and will allow Plaintiff to proceed in this action with only his claims in Count One concerning purported ADA and Section 504 violations and the portions of Count Three related to alleged retaliation for his complaints about ADA and Section 504 violations.  The Court further concludes that although Count One is adequately pleaded and may proceed, the ADA and Section 504-related retaliation claims in Count Three are not, and must be dismissed (with leave to amend).  Separately, the Court DENIES Plaintiff's motion to consolidate this action with *Johnson II*.

A.  Joinder

As an initial matter, the Court concludes that Plaintiff's various claims asserted in the FAC are improperly joined.  As such, the Court will allow only Plaintiff's first set of allegations concerning ADA and Section 504 violations, and related retaliation claims, to be pursued in this action (Count One and portions of Count Three).  All remaining claims are severed and dismissed without prejudice to Plaintiff pursuing them in separate lawsuits.

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants in one action if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with

respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and (2) "any question of law or fact common to all defendants will arise in the action."

With respect to the first requirement of Rule 20(a), what constitutes the same "transaction" or "occurrence" is assessed on a case-by-case basis. *Urbanski v. Dep't of Corr.*, No. 3:18-CV-1323 (VLB), 2019 WL 6683047, at *8 (D. Conn. Dec. 5, 2019) (quoting *Velasco v. Semple*, No. 19-CV-811 (KAD), 2019 WL 4060372, at *2 (D. Conn. Aug. 28, 2019)). As the Second Circuit has observed in the context of another federal rule that utilizes the "same transaction or occurrence" test, whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Urbanski*, 2019 WL 6683047, at *8 (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)); *see also U.S. v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979).

The second requirement—that a question of law or fact common to all defendants arises in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019) (citing *Wilson-Phillips v. Metro. Transp. Auth.*, No. 18-CV-417 (VEC), 2018 WL 5981736, at *1 (S.D.N.Y. Nov. 14, 2018)). The mere fact that the same constitutional provisions or statutes may be at issue in two or more claims is not enough to render the claims sufficiently related for purposes of joinder; rather, where a plaintiff's claims under the same constitutional or statutory framework "arise from different circumstances and would require separate analyses," the claims are not logically related. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012). And although misjoinder of parties is not a ground for dismissing an action, "[m]isjoinder of unrelated claims

against multiple defendants is a particular concern in prisoner-initiated cases because of the applicability of the three strikes and filing fee provisions of the Prison Litigation Reform Act." *Urbanski*, 2019 WL 6683047, at *8 (collecting cases).

Here, the Court finds that Plaintiff's varied claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences, as required by Fed. R. Civ. P. 20(a)(2)(A). Plaintiff's FAC raises seven different causes of action arising over the span of seven years at three different correctional institutions, against forty-five Defendants. The FAC is, in effect, an attempt to resolve multiple discrete lawsuits about Plaintiff's treatment in various Connecticut prisons over nearly the last decade within a single litigation. Plaintiff's FAC concerns the Department of Correction's failure to comply with the ADA and Section 504 by refusing to provide Plaintiff necessary transportation, assistive devices and appropriate housing; Defendants' alleged deliberate indifference to a wide array of serious medical needs, ranging from urinary and mental health conditions to eye care and dental care (and related allegations of gender discrimination); retaliation against Plaintiff for filing grievances, complaints, and lawsuits; sexual assault and battery; and RLUIPA violations based on Plaintiff's inability to undergo urodynamic testing due to his sincerely held religious beliefs. It is plain that not *all* of these claims are logically related, such that they should be resolved in a single lawsuit.

Additionally, the claims each involve different Defendants—many of whom work at different facilities—and concern unrelated circumstances. Plaintiff does not name specific Defendants in each count, making it somewhat difficult for the Court to identify the proper Defendants for each claim. But, for instance, the ADA and Section 504 claims appear to be alleged against the DOC and certain individual Defendants; the deliberate indifference to medical needs claims are alleged against Kennedy, Freston, Richeson, Wright, Pillai, Feder, Naqvi, Caplan,

Grande and Ryder; the claims concerning deliberate indifference to eye conditions are alleged against Smyth, Jamison and Medwick; the claims concerning deliberate indifference to dental conditions are alleged against Kelly and Cuevas; the retaliation claims are alleged against Quiros, Freston, Synder, Rodriguez, Doughtery, Barone, Doran and Mangiafico; the sexual assault and battery claims are alleged against Jusseaume, Daley, Cann-McGregor and Pearson; and the RLUIPA claims are seemingly alleged against Kennedy, Freston, Pillai, Caplan, Naqvi, Grande and Ryder.[5]  *See* ECF No. 251 ¶ 108.  Considering the length of time spanned in the FAC, as well as the plethora of grievances and Defendants named, the FAC neither adequately ties the events together nor contains sufficient allegations demonstrating any logical connection to permit joinder.

There is also no "question of law or fact" common to all forty-five Defendants in this action, as required under Fed. R. Civ. P. 20(a)(2)(B).  As stated above, many of the occurrences or series of occurrences described in the FAC involve different Defendants.  And no single Defendant is involved in every claim.  Moreover, the events span a seven-year period and involve distinct allegations that must be evaluated under different provisions of federal law, such as the ADA and Section 504, the First Amendment, the Eighth Amendment and RLUIPA.  And even the three claims arising under the Eighth Amendment involve distinct circumstances and would require separate legal analyses, ranging from evaluation of authority for sexual battery to deliberate indifference to a wide variety of medical needs.  Thus, the Court concludes that there is no common question of law or fact among the claims to permit joinder of all of the claims under Rule 20.

---

[5] The Court recognizes that there is at least some overlap of Defendants named with respect to the RLUIPA claim (Count Seven) and the deliberate indifference to serious medical needs claim (Count Two).  Based upon the Court's review of the factual allegations supporting those claims, however, the events are not logically related.  For example, the allegations in Count Two detail Defendants' purported failure to address Plaintiff's urinary retention needs (including assistance with catheterization), gender discrimination, denial of a therapeutic diet, and denial of appropriate pain management treatment, physical therapy and other treatment to address chronic pain, UTIs and mental health conditions, among other needs.  By contrast, the claims in Count Seven solely concern Defendants' alleged insistence that Plaintiff undergo urodynamic testing, in violation of his religious beliefs.

Plaintiff appears to acknowledge as much, as he draws a connection between only a few of his claims. *See* ECF No. 275 at 24 ("[Plaintiff's] ADA claims and Eighth Amendment claims are intertwined -- the denial of accommodations (ADA violations) is itself a form of cruel conditions (Eighth Amendment issue) and often was done with retaliatory animus."). He does not attempt to argue that his sexual assault and RLUIPA claims are related to those other claims. With respect to Plaintiff's argument that the ADA violations are forms of cruel and unusual punishment under the Eighth Amendment and are therefore properly joined to his ADA and retaliation claims, the Eighth Amendment claims Plaintiff advances in the FAC are distinct: they are based on deliberate indifference to Plaintiff's medical needs with respect to his urinary retention issues and other medical concerns, eye care, and dental care. He does not allege a straightforward Eighth Amendment violation related to cruel and unusual punishment because he was placed in ADA non-compliant facilities.

Having determined that Plaintiff's claims do not satisfy the requirements for joinder under Rule 20, the Court next decides whether severance is appropriate. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159–60 (S.D.N.Y. 2009) ("If a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action."). The Court may, in its discretion, "drop a party" or "sever any claim against a party" that it finds to be improperly joined. Fed. R. Civ. P. 21; *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) (the decision whether to sever a claim "is committed to the sound discretion of the trial court"); *Compania Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131, 133 (S.D.N.Y. 2009) (same). In evaluating whether a claim or party should be severed for misjoinder, courts consider the threshold requirements of Rule 20 and additional factors, including whether settlement of the claims or judicial economy would be facilitated,

whether prejudice would be avoided if severance is granted, and whether different witnesses and documentary proof are required for the separate claims. *Greystone Cmty. Reinvestment Ass'n Inc. v. Berean Cap., Inc.*, 638 F. Supp. 2d 278, 293 (D. Conn. 2009).

Here, as discussed above, the Court has determined that the FAC fails to meet the threshold requirements of Rule 20(a)(2), as the claims neither arise out of the same transaction or occurrence, nor present common questions of law or fact. On the present record, the Court is also not convinced that allowing all of Plaintiff's claims to proceed in this action will promote judicial economy. Insofar as Plaintiff argues in his opposition that the claims arise out of Defendants' systemic failure to address his needs throughout his confinement, the facts alleged in each count are distinct and implicate distinct time periods and parties. There will be no meaningful efficiency gained by attempting to resolve these claims in a single lawsuit. And if Plaintiff's claims were to proceed to trial, separate trials would be necessary because a different set of witnesses and evidence would be required to present and defend each claim (which each includes several subclaims). Failing to separate the trials would likely confuse the jury and result in prejudice to Defendants, given that the jury would otherwise hear evidence of a litany of other allegations concerning Plaintiff's treatment while in custody. Severing the claims at this early stage and allowing unrelated claims to proceed separately, on the other hand, would facilitate the fair and efficient disposition of the litigation, and Plaintiff would still have his day in court to address the alleged wrongdoings.

While the federal Rules do not set forth a brightline rule dictating how district courts should select which claims are severed from an action, some courts have suggested that the claims to be severed are those that are unrelated to the core claims. *See, e.g., Jordan v. Dep't of Corr.*, No. 3:24-CV-298 (VAB), 2024 WL 2801705, at *5 (D. Conn. May 31, 2024) (severing unrelated claims);

*Jusino v. Quiros*, No. 3:21-CV-620 (SRU), 2021 WL 5111908, at \*4 (D. Conn. Nov. 3, 2021) (severing count based on events that were unrelated to events underlying other counts of the complaint); *Ibbison v. Quiros*, No. 3:22-CV-01163 (SVN), 2023 WL 1766440, at \*8 (D. Conn. Feb. 3, 2023) (concluding that plaintiff's "claims relate to different time periods, different incidents, and, for the most part, different Defendants" and thus were improperly joined under Rule 20 and warranted severance and dismissal).

Here, the Court begins with the premise that Plaintiff's first claim, Count One alleging violations of the ADA and Section 504, is the core claim of this suit, given that it is alleged first. Plaintiff appears to allege this claim against Defendants the DOC, Deputy Warden Mangiafico, Dr. Omprakash Pillai, Colleen Gallagher, Michelle Walsh, Liz Vereen, Katherine Iozzia, Michael Person, Jennifer Cruz, Kristen Shea, Tawanna Furtick, and Nikia Henderson. ECF No. 251 ¶¶ 47, 50, 65, 68.

The only other claim that could be considered logically related to Count One is the portion of Count Three that alleges Plaintiff was retaliated against for filing grievances and various complaints about the alleged ADA violations, in violation of his First Amendment rights. *See id.* at 30 ¶ 87. Although that portion of Count Three names several Defendants who, for instance, received Plaintiff's ADA-related complaints, *see id.* ¶ 89, it contains somewhat direct allegations of retaliation for Plaintiff's ADA-related complaints against only Defendants Mangiafico, Wemell, Stanley, Lahd, Fleming, and Feliz, *id.* ¶¶ 96, 98–99. As there are likely to be common questions of law or fact between Plaintiff's ADA and Rehabilitation Act claim in Count One and his allegations that he was retaliated against for complaining about ADA violations in Count Three, the Court finds that that portion of Count Three is properly joined in this suit.[6]

---

[6] Defendants' arguments that Count Three fails to state a plausible claim for retaliation are addressed below.

All remaining claims—including all of Plaintiff's deliberate indifference to medical needs claims; the portions of his retaliation claim that do not relate to ADA complaints; his sexual assault claim; and his RLUIPA claim—are dismissed as improperly joined here. Plaintiff may pursue all of his severed claims in separate lawsuits subject to the same requirements of Rules 8 and 20.

Having determined that only Count One and portions of Count Three of Plaintiff's FAC may proceed, the Court next turns to Defendants' other arguments in support of their motion to dismiss these claims.

### B. Timeliness of ADA/Section 504 Claims

The Court concludes that Plaintiff's ADA and Section 504 claims in Count One are timely.[7]

Defendants argue that certain events in Plaintiff's FAC are barred by the three-year statute of limitations required for § 1983 claims and that principles of equitable tolling do not apply to Plaintiff's claims. As Plaintiff commenced this action on August 10, 2023, *see* ECF No. 1, Defendants argue that all claims involving events predating August 10, 2020, should be dismissed as untimely. Plaintiff, in turn, argues that the continuing violation doctrine applies to his claims.

Section 1983 itself has no federal statute of limitations; thus, federal courts adjudicating these claims "borrow the 'most analogous' state statute of limitations." *Connelly v. Komm*, No. 3:20-CV-1060 (JCH), 2021 WL 5359738, at *3 (D. Conn. Nov. 16, 2021) (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 488 (1980)). As Section 1983 claims are characterized as personal injury claims, the three-year statute of limitations from Connecticut's personal injury statute, Conn. Gen. Stat. § 52-577, applies. *See Lounsbury v. Jeffries*, 25 F.3d 131, 133–34 (2d Cir. 1994).

---

[7]The Court notes that each of Plaintiff's claims in the FAC includes a series of allegations. For instance, Count One, concerning alleged violations of the ADA and Section 504, details multiple events within the claim. As such, in evaluating whether Plaintiff's claims are timely, the Court focuses on the challenged conduct within the various claims—rather than the entire claim itself—unless otherwise indicated. Additionally, as Defendants do not mount a timeliness challenge to the portions of Count Three that is properly joined in this suit, the Court need not address that issue.

A claim brought pursuant to § 1983 "ordinarily accrues when the plaintiff knows or has reason to know of the harm." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).

However, the continuing violation doctrine is an "exception to the normal knew-or-should-have-known accrual date." *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). When a plaintiff brings a 1983 claim challenging a discriminatory policy—including, for instance, a policy of deliberate indifference to medical needs—"the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)). To assert the continuing violation doctrine when challenging discriminatory conduct, "the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time barred acts taken in furtherance of that policy." *Harris*, 186 F.3d at 250.

As the Court has determined that only Plaintiff's claims in Count One and portions of Count Three may proceed, it assesses the timeliness of only the allegations in these counts (i.e., ECF No. 251 ¶¶ 46–47 (concerning Plaintiff's denial of ADA-compliant housing in September of 2019) and ¶¶ 56–68 (concerning Plaintiff's denial of reasonable accommodations and assistive devices, which began in November of 2019)). Plaintiff's FAC alleges that he was housed in ADA non-compliant housing at Corrigan between September of 2019 and February of 2021, and that he similarly experienced non-compliant housing at MacDougall when he was transferred there in February of 2021. *See id.* ¶¶ 46–48. Then, Plaintiff alleges that he was transferred back to Corrigan in June of 2023 and placed in the same non-compliant conditions as before. *Id.* ¶ 54. In May of 2024, he was again transferred to MacDougall. *Id.* Drawing all reasonable inferences in Plaintiff's favor—as the Court must when assessing a motion to dismiss—the Court concludes that the ADA non-compliance continued between September of 2019 and May of 2024, while Plaintiff

was housed at Corrigan, then MacDougall, and then back at Corrigan. This is sufficient to demonstrate a continuing violation that extended well within the statute of limitations period. Thus, Defendants' request for dismissal of Count One on the basis of untimeliness fails.

### C. Eleventh Amendment

Defendants are generally correct that they cannot be sued in their official capacity for monetary damages under Section 1983. *See Kentucky v. Graham*, 473 U.S. 159, 170 (1985). This question is more complicated in the ADA context, however, as the Supreme Court has created a three-part test for determining whether a particular ADA claim abrogates states' immunity from damages awards. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). And with respect to the Rehabilitation Act, although Congress required states to agree to waive sovereign immunity from suit in federal court in order to accept federal funds, a state can "avoid Section 504's waiver requirement on a piecemeal basis, by simply accepting federal funds for some departments and declining them for others." *T.W. v. N.Y. State Bd. of Law Examiners*, 996 F.3d 87, 92 (2d Cir. 2021) (quoting *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000) (*en banc*)).

Defendants do not brief the issue of the availability of a damages remedy under the ADA or Rehabilitation Act specifically. Thus, the Court does not address the issue further, and leaves the question of possible remedies available as to Count One for a later stage of this litigation.

### D. Collateral Estoppel

Next, the Court concludes that Plaintiff's allegations in Count One are not barred by the doctrine of collateral estoppel, based on the initial review orders issued in *Johnson II*.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). Under

Connecticut law, which applies here, issue preclusion "requires an identity of issues between the prior and subsequent proceedings and operates only against the same parties or those in privity with them." *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 813 (1997).

"Collateral estoppel 'protects litigants from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,* 68 F.3d 1478, 1485 (2d Cir.1995) (quoting *Montana v. United States,* 440 U.S. 147, 153–54 (1979)). Collateral estoppel applies if (1) the issue in the prior proceeding is identical to the issue in the current proceeding; (2) the issue was "actually litigated and decided" in the prior case; (3) the plaintiff had a full and fair opportunity to litigate the issue; and (4) the prior determination was necessary to a final judgment on the merits. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979); *see also Marvel Characters, Inc.*, 310 F.3d at 288–89.

An overview of the factual and procedural history in *Johnson II* is instructive. There, Plaintiff filed a complaint describing a wide range of misconduct and deprivations during his incarceration that gave rise to the filing of several complaints to external agencies. *See* Compl., *Johnson II*, ECF No. 1. The gravamen of the original complaint was that these external agencies and their employees failed to properly assist Plaintiff in rectifying the alleged ADA and Section 504 violations and other alleged constitutional violations he had experienced in prison. *See id.* By Initial Review Order dated July 8, 2024, the court (Dooley, J.) dismissed Plaintiff's complaint as not plausible under 28 U.S.C. § 1915A(b), but afforded Plaintiff an opportunity to file an amended complaint to correct the deficiencies of his claims that were dismissed *without* prejudice, including ADA and Section 504 claims. *See Johnson II*, 2024 WL 3649743, at *10 (D. Conn. July 8, 2024), *appeal dismissed*, No. 24-2050, 2025 WL 2233884 (2d Cir. Feb. 20, 2025).

Thereafter, Plaintiff filed an amended complaint alleging a wide variety of claims against the DOC, Commissioner Angel Quiros, DOC ADA Coordinator Colleen Gallagher, DOC Staff Attorney Jennifer Lepore, the U.S. Department of Justice ("DOJ") Civil Rights Division (Local Office), U.S. Attorney Roberts Avery, DOJ Attorneys King and Patel, Disability Rights Connecticut ("DRCT"), DRCT Director Dorfman, and DRCT Attorney Byers. *See* Am. Compl., *Johnson II*, ECF No. 22. By Initial Review Order dated April 29, 2025, the court (Dooley, J.) determined that the following claims in Plaintiff's amended complaint may proceed: (i) an Eighth Amendment claim of deliberate indifference to Plaintiff's need for a special diet for his medical conditions of high blood pressure, nutrient deficiencies, and hemorrhoids (against Quiros in both official and individual capacities); (ii) an Eighth Amendment claim for denial of ADA-compliant housing and assistive devices (against Gallagher in both capacities and Quiros in an official capacity); (iii) a First Amendment Free Exercise claim concerning discontinuation of Plaintiff's special diet required for his religious needs (against Quiros in both capacities); (iv) a RLUIPA claim for injunctive relief to remedy the ongoing denial of Plaintiff's special diet for his religious needs (against Quiros in his official capacity); (v) a Fourteenth Amendment Equal Protection claim concerning disparate treatment relevant to the provision of a diet for Plaintiff's religious needs (against Quiros in both capacities); and (vi) ADA and Section 504 claims predicated upon the defendants' denial of ADA-compliant conditions and assistive devices (against Quiros and Gallagher in their official capacities and the DOC). *See Johnson II*, 2025 WL 1233960, at *11 (D. Conn. Apr. 29, 2025). The court dismissed all other claims with prejudice and terminated defendants Lepore, Avery, King, Patel, the DOJ, Civil Rights Division, the DRCT, Dorfman and Byers from that action. *Id.* Plaintiff's amended complaint (subject to the court's second Initial Review Order) remains the operative pleading in *Johnson II*.

The Court rejects Defendants' argument that the initial review orders in *Johnson II* preclude Plaintiff's claims in this action. While the Court acknowledges that there is some overlap between these two actions, it is not clear on the face of the pleadings that the issues brought pursuant to the ADA and Section 504 are identical; and even if they can be liberally construed as identical, the Court is not convinced that the remaining elements of the collateral estoppel test are met.

To start, Plaintiff's original complaint in *Johnson II* sued a different set of Defendants than are parties here, so Judge Dooley's initial review order dismissing that complaint can have no preclusive effect here, even if some claims were dismissed with prejudice. The Defendants in the *Johnson II* original complaint—external agencies and employees thereof—cannot be said to have been in privity with the Defendants presently sued here, who are primarily DOC employees (and the DOC itself). *See Mazziotti*, 240 Conn. at 814 (noting that privity is "a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion"). And the claims that were dismissed with prejudice in the first *Johnson II* initial review order have not been reasserted here.

Nor does the initial review order of the amended complaint in *Johnson II* have preclusive effect here. Plaintiff's amended complaint in *Johnson II* alleged, *inter alia*, that he was deprived of ADA-compliant housing and assistive devices from 2020 through 2024 and added Defendants Gallagher, Quiros, and the DOC, but as noted above, the allegations are largely broad. *See Johnson II*, ECF No. 22 ¶¶ 26–29. On initial review, the Court permitted these ADA claims to proceed, but dismissed Plaintiff's related ADA claims to the extent they were based upon the denial of medical or mental health treatment. *Johnson*, 2025 WL 1233960, at *11. Although the operative pleading in *Johnson II* and the FAC in this action both allege the denial of ADA-compliant housing and

23

assistive devices, the Court cannot conclude on the face of the pleadings that the allegations are identical. The FAC here provides more specific factual details, including the facilities, defined time periods and numerous specific examples of the alleged violations, which suggest that Plaintiff may have intended to advance distinct allegations in this action.

But even assuming that the issues in these two actions are identical—that Plaintiff was denied ADA-compliant housing and assistive devices while in DOC's custody—the remaining elements of the collateral estoppel test are not satisfied. Indeed, there was merely an initial review order issued in *Johnson II* pursuant to 28 U.S.C. § 1915A, which is a preliminary screening. *See* 28 U.S.C. § 1915A(a). Defendants have provided no authority for the proposition that an initial review order issued under § 1915A should be entitled to preclusive effect. And in any event, Judge Dooley's order determined that most of Plaintiff's ADA and Rehabilitation Act claims in the amended complaint could *proceed*, rather than dismissing them. Moreover, while the defendants in *Johnson II* have been served with the amended complaint and have entered appearances, no discovery or dispositive motion practice has occurred in that case, as the court postponed issuance of any scheduling order until after it decides Plaintiff's motion to consolidate *Johnson II* with the instant action. *See* Order dated June 30, 2025, *Johnson II*, ECF No. 36. Under these circumstances, it cannot be said that Plaintiff had a meaningful opportunity to litigate his ADA and Section 504 issues, that these issues were actually litigated and decided, and that a final determination or judgment on the merits was issued. Thus, the Court finds that issue preclusion cannot be invoked to bar Plaintiff's ADA and Section 504 claims in this action.

Similarly, although Judge Dooley dismissed Plaintiff's First Amendment retaliation claim brought in the amended complaint in *Johnson II* through the second initial review order, *see Johnson II,* 2025 WL 1233960 at *8, the Court cannot conclude that that claim is barred here, for

the same reasons.  It is not clear that an initial review order is entitled to preclusive effect, absent a final judgment.  And given that an initial review order is a preliminary screening conducted by the Court without the benefit of briefing from all parties, the Court cannot conclude that Plaintiff had a meaningful opportunity to litigate his First Amendment retaliation claim in *Johnson II*, such that he should be precluded from asserting it again here.

      E.  <u>First Amendment Retaliation</u>

In any event, however, the Court concludes that Plaintiff's First Amendment retaliation claim is not plausibly pleaded against any Defendant, but it will allow Plaintiff leave to amend this claim.

For a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (citation omitted).

To constitute "adverse action," conduct must be of the "type that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (citation omitted).  In the context of an inmate's claim of adverse action, the court considers "that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Id.* (citation omitted).

To satisfy the causation requirement, the plaintiff must allege "but-for" causation. *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019); *accord Handsome, Inc. v. Town of Munroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir. May 29, 2024) (summary order).  Courts must approach prisoner retaliation claims with "skepticism and particular care, because virtually any adverse action taken

against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). The Second Circuit requires that prisoner retaliation claims be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Id.* (internal quotation marks omitted).

Plaintiff's allegations regarding retaliation appear to meet the first two required elements. First, he alleges that he filed numerous grievances with DOC, complaints with external agencies, and lawsuits in state and federal courts, all of which qualify as protected First Amendment activity. *See* ECF No. 251 at 30 ¶ 87; *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003) (grievances); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (complaints to administrative agency); *Espinal v. Goord*, 558 F.3d 119, 128–29 (2d Cir. 2009) (lawsuits). Second, transfer of a prisoner to another prison facility—even to another prison facility with comparable conditions—can rise to the level of an adverse action for purposes of a First Amendment retaliation claim. *See Smith v. Levine*, 510 F. App'x 17, 21 (2d Cir. 2013) (summary order) (collecting cases). Plaintiff also alleges that an order for nursing assistance was cancelled and he was threatened with segregated housing if he did not propel himself back to his unit, rather than allowing volunteers to assist him, ECF No. 251 at 31 ¶ 96; his therapeutic diet was discontinued, *id.* at 32 ¶ 97; Defendants Wemmell, Stanley, Lahd, and Fleming conspired to conceal an assault by failing to file incident reports or create timely separation profiles between Plaintiff and an inmate who assaulted him, *id.* at 32 ¶ 97; and Defendant Lt. Feliz used excessive force against him and placed him in segregation, *id.* ¶ 99. Each of these events could deter an inmate of ordinary firmness from exercising his First Amendment rights.

But the Court cannot find that Plaintiff has adequately alleged that his ADA and Rehabilitation Act complaints were but-for causes of these adverse actions. To start, Plaintiff does not identify any particular defendant who was involved in the purported retaliatory transfers; Plaintiff simply alleges he *was* transferred, without alleging any facts about *who* transferred him (must less that anyone who received his complaints was responsible for transferring him). And even if he had alleged who was responsible for initiating the transfers, he does not provide sufficient details from which the Court could conclude that the transfers were made in retaliation for the complaints about ADA/Rehabilitation Act non-compliance.

With respect to the cancellation of the order for nursing assistance, although Plaintiff identifies that Deputy Warden Mangiafico "conspired to cancel this order," there are no facts that would link the cancellation of the order with Plaintiff's ADA/Rehabilitation Act complaints.

Similarly, while Plaintiff alleges that Dr. Cary Freston discontinued his therapeutic diet in June of 2023, he provides only a conclusory allegation that this "occurred shortly after Mr. Johnson withdrew his medical habeas corpus petition due to having filed another civil action raising the same claims, and appears to have been in retaliation for his litigation activities." ECF No. 251 at 32 ¶ 97. Without knowing if Dr. Freston was sued in that new action—or otherwise knew of the litigation activities—Plaintiff has not plausibly alleged that Dr. Freston retaliated against him because of his protected activity. Likewise, Plaintiff's allegations that Lt. Feliz engaged in excessive force and placed him in segregation due to his complaints are plainly conclusory.

The allegations against Defendants Wemmell, Stanley, Lahd, and Fleming are a closer call, but also ultimately fail. Plaintiff alleges he was assaulted by another inmate on August 25, 2022, and that these Defendants "encouraged inmate Wilson to assault him," and conspired to cover up the assault. ECF No. 251 at 32 ¶ 98. Although Plaintiff does not explicitly allege it this way, the

Court infers from the allegations that the Defendants acted in this manner because Plaintiff filed ADA complaints and requested that a disability rights attorney visit his housing unit to document ADA violations.  *See id*.  But aside from stating the date of the assault, Plaintiff does not state the date of the complaints or the visit, so as to raise an inference of causation through temporal proximity.  Plaintiff does not even allege that these Defendants knew about his complaints or the visits.  Thus, his conclusory allegations cannot suffice.

For these reasons, although the portions of Count Three that relate to retaliation for ADA/Rehabilitation Act complaints are properly joined here, they must be dismissed, with leave to amend.[8]

### F.  Qualified Immunity

As Defendants argue they are entitled to qualified immunity only on Plaintiff's RLUIPA claim, which has been dismissed from this suit as improperly joined, the Court does not address the issue further.

### G.  Consolidation

Finally, the Court concludes that it is inappropriate to consolidate this action with *Johnson II*, as Plaintiff seeks.

The Court may "join for hearing or trial" actions that "involve a common question of law or fact" in order to "avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  A trial court has broad discretion when determining whether consolidation is appropriate.  *Johnson*, 899 F.2d at 1284.  Rule 42 "should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and

---

[8] Plaintiff also badly asserts that Defendants Angel Quiros, David Snyder, Nick Rodriguez, Daniel Dougherty, Kristine Barone, Damian Doran, and Mangiafico "directly participated in or approved the retaliatory transfers and other adverse actions," ECF No. 251 at 39 ¶ 122, but he alleges no facts to support this conclusory allegation.

eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (cleaned up); *see also Hall v. Hall*, 584 U.S. 59, 70 (2018) ("[C]onsolidation is permitted as a matter of convenience and economy in administration.") (citation omitted).  The decision whether to consolidate is driven by a balance of equity and judicial economy.  *Devlin*, 175 F.3d at 130.  Thus, consolidation is only permissible when "savings of expense and gains of efficiency can be accomplished *without sacrifice of justice*."  *Id.* (emphasis in original) (citation omitted).

Here, based upon the Court's review of Plaintiff's allegations in the FAC in this action and the claims that survived initial review in *Johnson II*, it concludes that consolidation is not warranted because these two cases do not present a sufficient overlap of factual and legal questions. The Court acknowledges that both this case and *Johnson II* detail various ways that Plaintiff was denied ADA-compliant housing and assistive devices, among other accommodations.  These two cases may thus require review of legal standards under the ADA and Section 504.  But on the present record, the Court cannot determine that these two cases are sufficiently related to necessitate consolidation based on this commonality, or that judicial economy will be served by consolidation.  While the FAC here details a significant number of alleged ADA and Section 504 violations spanning a lengthy period across multiple facilities in a variety of contextual circumstances, the allegations in *Johnson II* are framed more generally, from the period of 2020 through 2024.  As pleaded, it is unclear whether the claims in *Johnson II* arise from the same operative facts or concern the same facilities or time periods as those at issue in this action. Moreover, *Johnson II* contains a wide variety of other claims (against a different set of defendants) unrelated to Plaintiff's ADA and Section 504 claims, including claims sounding similar to those the Court has deemed improperly joined above.  Consolidation under these circumstances would

therefore undermine, rather than promote judicial economy and may result in confusion. And albeit in the context of his objection to the application of collateral estoppel, Plaintiff himself concedes that the claims in these two cases are not sufficiently related. *See* ECF No. 275 at 12–13. Thus, Plaintiff's motion for consolidation, ECF No. 217, is DENIED.

## IV.    CONCLUSION

For these reasons, Defendants' motion to dismiss, ECF No. 264 is **GRANTED IN PART** and Plaintiff's motion to consolidate, ECF No. 217, is **DENIED**.

The Clerk is directed to terminate all Defendants except the Department of Correction, Deputy Warden Mangiafico, Dr. Omprakash Pillai, Colleen Gallagher, Michelle Walsh, Liz Vereen, Katherine Iozzia, Michael Person, Jennifer Cruz, Kristen Shea, Tawanna Furtick, and Nikia Henderson.

Plaintiff may proceed in this suit with Count One, alleging violations of the ADA and Rehabilitation Act against the above-named Defendants. Plaintiff is granted leave to amend with respect to the portions of his First Amendment retaliation claim (Count Three) that relate to his filing of complaints related to ADA and Rehabilitation Act non-compliance. In the interests of judicial efficiency, Plaintiff may also amend Count One to include his ADA and Rehabilitation Act violations against Defendant Quiros alleged in *Johnson II* in this action. The Court will also permit Plaintiff to amend his complaint in this action to include his Eighth Amendment claim from *Johnson II* for denial of ADA-compliant housing and assistive devices (alleged against Gallagher in both capacities and Quiros in an official capacity), so that this action will encompass all of Plaintiff's ADA and Rehabilitation Act-related claims.[9]

All other claims are dismissed, and Plaintiff may pursue them in separate actions.

---

[9] If Plaintiff does so, the Court will dismiss the related claims in *Johnson II*.

The Court will convene a status conference to discuss the orderly progression of this case in light of this ruling, including resolution of the pending motions for injunctive relief.

**SO ORDERED** at Hartford, Connecticut, this 25th day of February, 2026.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE